# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

**DIANE D'AMICO**                                                                                          **PLAINTIFF**

**V.**                        **CASE NO. 3:17-CV-00212-JTK**

**NANCY A. BERRYHILL,**
**Deputy Commissioner for Operations,**
**performing the duties and functions not reserved**
**to the Commissioner of Social Security**                                                                 **DEFENDANT**

## ORDER

**I.  Introduction:**

Plaintiff, Diane D'Amico, applied for disability benefits on October 15, 2014, alleging a disability onset date of September 9, 2014 (Tr. at 27). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 39). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and D'Amico has requested judicial review.

For the reasons stated below, the Court[1] affirms the decision of the Commissioner.

**II.  The Commissioner's Decision:**

The ALJ found that D'Amico had not engaged in substantial gainful activity since the alleged onset date of September 9, 2014. (Tr. at 29). The ALJ found, at Step Two of the sequential five-step analysis, that D'Amico has the following severe impairments: degenerative disc disease, peripheral neuropathy, essential hypertension, osteoarthritis, and obesity. *Id.*

At Step Three, the ALJ determined that D'Amico's impairments did not meet or equal a listed impairment. (Tr. at 30). Before proceeding to Step Four, the ALJ determined that D'Amico

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

had the residual functional capacity ("RFC") to perform work at the sedentary level, except that she could only frequently reach or handle. (Tr. at 31).

At Step Four, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on D'Amico's age, education, work experience and RFC, she could return to past relevant work as security officer. (Tr. at 38). Based on that determination, the ALJ held that D'Amico was not disabled. *Id*.

### III. Discussion:

#### A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

#### B. D'Amico's Arguments on Appeal

D'Amico contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the ALJ should have found depression to be a severe impairment and that the RFC exceeded her functional capacity. For the following reasons, the Court finds that substantial evidence supports the ALJ's decision.

2

As for depression, the record reflects D'Amico did complain of depressive symptoms during the relevant time-period, although on her initial application, she did not allege depression prevented her from working. (Tr. at 309). *See Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011)(in affirming ALJ's finding of no mental impairment, the court noted that claimant did not allege mental impairment on the application for benefits). At the initial interview, she did not have problems in understanding or answering questions. (Tr. at 333). In October and November 2014, a depression screen was negative and her appearance was normal and appropriate. (Tr. at 411-413, 446). A lack of clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

When D'Amico had a consultative medical examination in December 2014, she was alert and cooperative and did not appear depressed or anxious. (Tr. at 458). She was able to communicate and had good insight and cognitive function. *Id*. She stated she was independent in household activities of daily living. (Tr. at 457). In February 2015, a depression screen was negative and she was not feeling depressed or hopeless. (Tr. at 669).

D'Amico did not complain of depression until April 17, 2015, seven months after the alleged onset date. (Tr. at 800-803). She was diagnosed with major depressive disorder and given a Global Assistive Functioning score of 44. *Id*. She was encouraged to seek therapy. *Id*. But within days of this diagnosis, D'Amico's affect was normal and she denied depression or anxiety. (Tr. at 697, 724, 800).

In May 2015, D'Amico presented as tearful at her initial therapy session. (Tr. at 795-796). In June 2015, she said she had been irritable and picked fights with her partner. (Tr. at 793-794). However, in August 2015, she said her medication was working really well, and she was making

good progress. (Tr. at 839-840, 869, 906). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). In November 2015, D'Amico reported no acute concerns and that she was "not at all" depressed. (Tr. at 885-888). The next month, she denied depression or anxiety. (Tr. at 970). Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968 F.2d 725, 728 (8th Cir. 1992).

In January 2016, D'Amico saw Angie Martin, APN, and complained of sadness and anxiety. (Tr. at 994-995). But she said that increasing her trazodone dose was helping her sleep. *Id*. She was continued on citalopram and trazodone. *Id.* A therapy note from June 2016 indicated that D'Amico had not been to therapy since April: she had not presented "for a single therapy session this review period." (Tr. at 71-72). D'Amico admitted she had "not been consistent in therapy." (Tr. at 998). Failure to keep doctors' appointments undermines credibility. *Lochner*, 968 F.2d at 729.

Ms. Martin completed a medical source statement in August 2016, after the date of the hearing decision, and she indicated marked or extreme mental health limitations. (Tr. at 11-13). This statement is not supported by the evidence of record, and does not mention D'Amico's missed therapy appointments or improvement with medication. Medical opinions must be supported by clinical findings. It is well established that an ALJ may grant less weight to a treating physician's opinion, when that opinion conflicts with other substantial medical evidence contained within the record. *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000).

D'Amico had the burden of proving her depression was severe, which by definition significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 465 F.3d 890, 894

4

(8th Cir. 2006); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(a). A physical or mental impairment must last or be expected to last not less than 12 months. *Karlix v. Barnhart,* 457 F.3d 742, 746 (8th Cir. 2006). If the impairment would have no more than a minimal effect on the claimant's ability to do work, then it does not satisfy the requirement of Step Two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). The record does not show the type of depression that critically affects D'Amico's ability to function independently or complete work tasks. She had minimal formal mental health treatment, a positive response to medications, and no inpatient psychiatric care. The ALJ did not err at Step Two with respect to depression.

Second, the ALJ's assigned RFC properly incorporated all of D'Amico's limitations. A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

D'Amico asserted that her back condition would prevent her from performing the sitting requirements of even sedentary jobs. However, MRIs of her back showed mild conditions. In October 2011, a cervical MRI showed mild to moderate loss of disc space and mild neural impingement. (Tr. at 938-939). In December 2014, cervical x-rays showed mild degenerative deformity with good alignment of the cervical spine. (Tr. at 459). X-rays of the lumbar spine were unremarkable. Objective tests showing mild to moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).

5

While straight-leg raises and Patrick's test were positive in December 2015, an MRI of the cervical spine in December 2015 showed mild flattening of the interior thecal sac and mild foraminal narrowing; and a lumbar MRI showed facet hypertrophy without significant spinal stenosis. (Tr. at 978-979). She had mild tenderness in her back and limited range of motion. (Tr. at 971-973). But D'Amico had only treated with Ibuprofen for most of the relevant time period, and she was discharged from physical therapy for missing sessions. (Tr. at 950-051, 969-970). Norco helped with pain as of December 2015. (Tr. at 969-970). D'Amico did not need surgical intervention for her back condition. The need for only conservative treatment contradicts allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

Dr. Terry Hansen, M.D., performed a medical consultative exam in December 2014. He found normal gait and station, intact sensation, and normal muscle strength. (Tr. at 457-459). He found no significant limitations in D'Amico's ability to sit, walk, or stand. *Id*. The ALJ properly gave this opinion great weight because it aligned with clinical testing results and positive response to medication. It also dovetailed with the opinions of the state medical consultants who found mild limitations, befitting a light RFC. (Tr. at 187, 198). The ALJ went beyond those recommendations and limited D'Amico to a sedentary work level, obviously giving credit to her complaints of pain. Therefore, he did not err in his RFC determination.

**IV. Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ did not err in his Step Two finding and the RFC fully incorporated D'Amico's symptoms and limitations. The finding that D'Amico was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is affirmed. The case is dismissed, with prejudice.

IT IS SO ORDERED this 11th day of May, 2018.

_____
UNITED STATES MAGISTRATE JUDGE